argument this morning. I'm pretty sure that at least after the second case we'll take a little short break before we take on the last case. I mean that could change but for purposes of planning for those out there that's most likely the way we'll proceed. All right, the rules are pretty straightforward. The most often violated is talking too low so we can't hear you and so the tape doesn't get you so please keep your voices up and in the mic and don't strafe in the podium in that way. We'll be sure to get all that you want us to know. First case United States v. Gordon. Mr. Herman. May it please the court. This case presents two issues. First the interpretation of the specific language of the career offender guideline and secondly the imposition of a mental health treatment condition as a special condition of supervised release. On the second issue the government and the defendant agree that the district court committed plain error in imposing the mental health condition because there is no record evidence to justify its imposition and no identification by the district court of other reasons based on the record for that case to have that condition stricken and so unless the court has questions since we are in agreement on that second issue I'll proceed directly to the career offender issue. I'm curious as to why the mental health treatment condition isn't justified by this defendant's violent criminal history and recidivism. Your honor there are several reasons. First of all the PSR itself identifies that he has no history of mental health treatment or diagnosis of a mental health condition. As for the violence part there's a separate condition of supervised release that required him to seek anger management and so we're not challenging the imposition of that. We've agreed that the facts of the case as reflected in the PSR justify the anger management treatment condition but not the separate condition of mental health treatment which could be justified for example by a prior diagnosis of some. You don't think it was because there was no other there was no other information that indicated that he had a mental health condition or that the probation officer was recommending this particular form of treatment as opposed to anger management or anything related to his abuse of drugs but a mental health treatment condition would have been a very specific justification. So you think the anger management is going to handle the problem with his violent past? He had quite a history. Yes your honor it seemed to be focused more on the anger aspects whether it was resisting arrest or in the subsequent other criminal history charges that were reflected it was a it was an issue that seemed to be reflective of anger but there was no indication for example that he had a history of schizophrenia or treatment for any form of mental disease. Well say. Yes your honor and on the career offender issue. Well let me just say so how did the you have a sense of how the district court came to imposing that commission condition I mean it didn't emerge from anything indirectly in the PSR or otherwise or do you know? No your honor I didn't find anything in the record that would reflect that there was a separate indication. I did see in the record although the district court didn't mention it the concern with his violent past or with anger management issues and so we could see the justification for the imposition of that condition but not of a specific mental health condition on top of the anger management condition. Nothing in his you know like childhood history or that background like you know issues in schooling etc. I mean I get it about the anger management part but often not you know when people are drilling back into the school record and so forth there are some indications of something there maybe it was maintained and not and so kind of one of these out of abundance of caution of thought that the combination of anger management with you know mental health may be so for me I mean it wasn't like just totally out of the out of the gourd but if you say you know it's not I mean we'll look hard but that's what occurred to me that perhaps since he had admittedly a long span of the anger problem that something in his background either in school or otherwise somebody said in the mental health and so the district court felt coupling anger management with mental health might be more of a holistic solution if you will but your honor having looked at the record again we didn't find anything that would indicate that sort of specific concern on mental health treatment as opposed to I mean other than the fact you know say it's not justified I mean sort of like what's the downside for your client having the mental health I mean what's the deleterious effect of it I mean I get it if you say well you know wasn't justified and all that but I can think of a lot of special conditions that you know one might really find onerous burdensome costly etc etc I mean is there some other sort of inherent objection to it I think there are three objections one is the additional costs that might be imposed although the judge orally didn't impose payment of costs the judgment itself the written judgment of course did impose payment of costs along with payment of costs of the anger management treatment it's a doubling up of the actual commitments that he has so in in realistic practical terms the burden of having to go to an anger management course and go to mental health treatment and maintain a job and maintain his other obligations under supervised release does simply add one more burden and one more possible reason for subsequent imprisonment if he can't manage all of those different burdens placed on him and then the mental health treatment as we stated in the briefs produces a separate form of stigma the anger management itself obviously in his criminal history is its own stigma but the mental health treatment adds a separate stigma in addition to that okay all right thank you the career offender issue which we are in dispute about is this whether the use of the specific language on under this subsection that phrase under this subsection in section 4b 1.1b limits the applicability of the rule requiring a criminal history category of six only to those offenders whose offense level is set according to subsection b's specific and heightened offense level table rather than the otherwise applicable offense levels that to which that rule refers parsing this requires the court to look specifically at that language and of course 4b 1.1 is divided into separate subsections subsection a sets out the rule to determine whether an offender qualifies generally as a career offender subsection c set which was added in 2002 sets out a special rule to determine sentencing ranges for those convicted of firearms offenses under 18 usc 924c and similar offenses that subsection i believe we're in agreement on does not apply at all in this case the focus is subsection b and it's only two sentences the first sentence sets offense levels and it states except as provided in subsection c if the offense level for the career offender quote from the table in this subsection is greater than the offense level otherwise applicable then apply the offense level from again quote the table in this subsection so in two parts in that one sentence the sentence what the district judge did she did do that in this case but what i'm trying to draw the distinction to is your honor is what happens in the next sentence where in setting the rule for criminal history category the sentencing commission again made reference specifically to under this subsection stating that a career criminal history category in every case under this subsection shall be a six and it's the repeated reference to that phrase under this subsection or from this subsection in both sentences that focus the district court on is the offense level determined from the table under this subsection from the special rule that applies to career offenders because if not the first sentence of the guideline then refers the district court back to the otherwise applicable guideline but you can see that if we rule your way we would be creating a circuit split you would be but the 11th circuit in Marseilles did not consider what we've argued to the court and that is the rule of lenity because in the in this case as in Bustillos-Pena or as in Skilling what the court has is plausible interpretations of the specific language of the statute interpretations that can conform to the congressional policy underlying the career Skilling what the court said was if you have plausible interpretations and one interpretation is not plainly supported by the text on either on either side then the rule of lenity has to be the principle of decision and that rule of lenity requires finding for the defendant in this criminal case that's what distinguishes this case from Marseilles because there was no evidence in Marseilles that the court considered the rule of lenity in trying to reach its decision and in this case the the interpretation that Mr. Gordon is proposing it is consistent with the remainder of the guideline it respects the fact that there is a reference to this specific subsection subsection b unlike the government's alternative we're not asking the court to have to add language for example both the government and the 11th circuit stated what the sentencing commission really meant was that every offender qualifying under subsection e or subsection a excuse me subsection a except is provided under subsection c merits the criminal history category of six but that's not what the sentencing commission said at all it made only one reference and that is internally to subsection b no cross reference to subsection a to try to bring in everyone who would otherwise qualify as a career offender so the defendant's reading of this is much more limited in the sense that it respects the exact language there without needing to add additional language what we're proposing also corresponds to the congressional policy because in this career offender guideline the policy is set out in the briefing was to raise the career offender up to closer to the statutory maximum and the sentencing commission made the decision that when the otherwise applicable offense level was higher than that under the career guideline there was simply no need to go outside of the otherwise applicable guideline that same rule should apply with regard to the criminal history category because if you're already at a higher range than what the career offender offense level would provide there's no need to simply add on gratuitously an enhancement to an to a career offender criminal history category that's not separately stated or separately set out so once again all of these come back to of course the rule of lenity because if either of these two formats is plausible and we've presented reasons and bases focused on both the text and the policy to say why mr gordon's position is both plausible and reasonable in that circumstance then the rule of lenity would require a finding for mr gordon in this case and applying the criminal history category that would otherwise apply to him which is criminal history category four along with the otherwise applicable offense level which in this case because of the combination of the two offenses it happened that that offense level was much higher and so therefore produced a higher sentence based not on the career offender guideline but on his otherwise applicable offense level which was for alien transportation for all of those reasons your honor that's why this case is different than marseille it's different than in the dc circuit court decision in miller which simply relied on on the marseille case and so for that reason it would create a separate yes a separate conclusion but it would be a conclusion based on a principle of decision that it appears that neither of those the court has any further questions i will reserve the remainder of my time for rebuttal all right thank you mr gould good morning and may it please the court andrew gould for the united states the district court properly applied the criminal history category rule of 4b 1.1b for three reasons the plain language its history and the supporting case law i'm going to address each in turn and then after discussing the criminal history category issue i'll turn to the issues surrounding the mental health condition if that's acceptable beginning with the plain language of the guideline there's much that the parties actually agree upon 4b 1.1 is divided into three subsections each subsection subsection serves a distinct purpose subsection a provides a universal definition of the term career offender subsection b provides rules that apply to all career offender defendants except for those convicted of 924c and 929a offenses and finally subsection c provides special rules for those career offender defendants who were convicted of a 924c or 929a offense do you think that your opposing counsel's reading of the rules is plausible i do not your honor you would agree that if it were plausible then under the rule of lenity we would have to go his way you just don't think it's plausible yeah that's correct judge haynes um briefly on the rule of lenity i just want to note procedurally that argument wasn't raised until the reply brief but be that as it may um the united states if it were argued in the in the opening brief the government would still argue that that's not a plausible interpretation again in light of the plain language the history and the case law so mr gordon doesn't dispute that he's subject to subsection b what he argues instead and back to that uh would you do you go his way because the other courts didn't consider the rule of lenity what's your answer to that i disagree generally on that and let me explain why it's true that there's nothing in marseilles the 11th circuit's opinion uh that indicates that they considered the rule of lenity argument but at the same time what would be the end result i mean the end result would be that this court if they were to if this court were to agree with mr gordon then it would be interpreting 4b 1.1 b's uh criminal history category rule differently from the 11th circuit the dc circuit and actually the 9th circuit too um and on the 9th circuit so the 11th and dc circuit have expressly rejected his claim the 9th circuit and waters which the government has cited in its brief also indicates that it disagrees um with mr gordon's position there the defendant um was his offense level was set by chapters two and three of the guidelines because that was a greater otherwise applicable um offense level later on appeal after um 2d 1.1 which was the base offense level for the waters defendant after that was amended he came back and said you know based on the amendment he filed a motion for reduction of sentence under 3582 he argued the district court uh denied his motion because it said your guideline range wouldn't change based on 4b 1.1 the 9th circuit rejected his argument that the district court originally hadn't applied 4b 1.1 b it stated that its decision not to set the offense level per 4b 1.1 was an application itself of 4b 1.1 and that gets back to the plain language of the guideline the offense level rule states that except as from the table in this subsection is greater than the offense level otherwise applicable the offense level from the table in this subsection shall apply and we have there the offense level otherwise applicable as marseille from the 11th circuit explains that's an instruction to district courts that if the defendant is otherwise subject to a greater applicable offense level use that offense level but that doesn't mean that the district court has not applied 4b 1.1 b it has it's followed that express instruction and so then that plays into the next sentence the criminal history category rule a career offenders criminal history category in every case under this subsection shall be category six so two points on that first baked into mr gordon's argument is this assumption that the district court by using the otherwise applicable guideline range or excuse me the otherwise applicable offense level has not applied 4b offense level the under this subsection language that is simply a reference to subsection c for those not excuse me those career offenders who were convicted of a 924 c or 929 a offense who do not receive a criminal history category they simply get a guideline range beyond the plain language look to the history of the guideline 4b 1.1 was amended to its current version in 2002 before then it consisted of a single section there were no subsections there was a career offender definition that matches what it is now there's an offense level rule that matches generally what it is under 4b 1.1 b and finally there's a criminal history category rule that also generally matches what it is now with the exception of the under this subsection language i don't think mr gordon would dispute that if he had been sentenced under the previous form of 4b 1.1 that his claim would fail so then the question becomes what happened when the commission added that phrase and they created this tripartite structure we don't have to guess about it there's no ambiguity we know from amendment 642 it states the reason for this amendment to create the tripartite structure is simply to create special rules for 924 c and 929 a offenders there was no mention and there was no suggestion that the rules were supposed to be altered for all other career offender defendants such as mr gordon so the history is consistent with the plain language of the guideline and be creating a circuit split with the 11th circuit with the dc circuit and also with the 9th circuit beyond the circuit split the sentencing commission knows how to amend a guideline to account for an erroneous court decision we see that from time to time where courts will interpret a guideline enhancement in a particular way and they come back they amend the guideline and they say in the reason for the amendment the reason we're doing this is to essentially reverse these decisions the sentencing commission has had three opportunities to amend 4b 1.1 to account for what is essentially mr gordon's interpretation in 2004 after the 11th circuit's decision in 2005 after the dc circuit's decision and finally in 2011 after the 9th circuit's decision it hasn't done so and that's yet another indication that mr gordon's interpretation simply is not plausible so based on the plain language of the guideline its history and the case law the history category rule of 4b 1.1 i'll briefly address the issues surrounding the mental health condition the government in this case agrees under the unique circumstances that the imposition of the mental health condition constituted reversible plain error uh judge clement you've asked about was excuse me you know what is there you know why based on his violent history is that not a sufficient basis the government respectfully based on the government's position is simply that because of the anger management condition which was separately imposed that in which mr gordon hasn't challenged that covers at least the violent history component of it the government also follows although this court of course is not bound by its unpublished decision in the garcia case which the government cited in its brief under very similar circumstances to this case this court found reversible plain error if there was something in the record uh chief judge stewart you were asking about this if there was something in the record that could justify the mental health condition the government would be making a different argument and we have in different cases we did not see anything in the record that's not to say that upon remand if there is a more mr gordon's school history that points that out then it might be justified but based on the record before the court which was simply in the pre-sentence report the government doesn't believe that that was enough to impose the anger management condition oh excuse me excuse me yes the mental health condition i apologize if the court has no further questions uh we respectfully request that you affirm the judgment of the district court with the exception of the mental health condition all right thank you bow mr herman your honor the government says that our reading is implausible but yet we focused on the exact words of the guideline itself and pointed you to this distinction between when the sentencing commission used the phrase otherwise applicable and then the repeated reference not to this guideline not to other subsections of this guideline but to this particular subsection of this guideline which set a specific table and then made reference to an otherwise applicable guideline range the government's propositions depend on the court looking to the other subsections of the guideline even in this argument the court the government said that the criminal history category rule is really just a reference to subsection c saying except is provided in subsection c but that's not what this particular subsection b says that would have been a very easy drafting issue for the sentencing commission to have taken account of if they had wanted to do that they certainly did do that with regard to the sentencing table in subsection b so our our reading of this is not contrary to the plain language it's simply a different interpretation of that plain language and it's an interpretation that doesn't require the court to add other words that no sentencing commission has added during this entire time period and that's the importance of the rule of lenity as well in a in a vacuum we may not be right certainly the sentencing commission and its amendment in 2002 could have explained why it was changing this particular rule and we know that the overall policy context was to take account of 924 c but the government neither in writing nor here is pointed to specific wording in the reasons for amendment that give an explanation for why the criminal history category language was changed it's an absence of statement an absence of reasoning and from that what the court is left with is ambiguity once again the importance of the rule of lenity when there's an ambiguous statute or guideline when each as you didn't raise the rule of lenity argument to your reply brief you agree with that it's true that in our briefing we raised that for the first time in the reply brief but i'd also point out that that the exact actual citation to the case justios pena was raised in the psr objections and it was argued to the district court as a reason why the district court should impose sentence with exactly what we're proposing now that was in the written psr objections that were made at the district court level so we've been consistent in presenting that argument throughout both at the district court and now here and it was presented as a response to the government's arguments as to why our interpretation was not particularly correct and in terms of the circuit split if there is a circuit split that would develop in terms of the actual implementation of 4b 1.1b as the government pointed out the sentencing commission on a yearly basis amends its amends its guidelines if there's some issue that needs to be amended if the sentencing commission feels that this is not the appropriate answer then the sentencing commission is equally capable but doesn't that cut against you the fact that we've had three cases over a relatively long period of time and they haven't changed it so they i mean the rule of lenity wouldn't be the decider on them they they just are you right or are you wrong and if they thought it was wrong after three circuits said this they should have amended it so why should we stumble in and get it wrong to then make them make it more clear in your view more clear i think there are two two reasons for that first of all the guideline practice is under the sentencing commission's purview but the rule of lenity is a rule of jurisprudence that you know i understand that but what i'm saying is they don't even have to worry about that if we got it wrong in their mind even if the rule was clear there's no other plausible reading but the circuit's interpretation isn't what they intended then they could change it they're not hampered by whether they're a lawyer raised the rule of lenity that's the point i'm making it's not that i don't understand what the rule of lenity is i'm saying they're not hampered by what did the lawyers argue to the circuits they're just looking at what are the circuits doing and going whoa that's wrong let's fix it and they haven't done that so that's what council opposite is saying there's only one circuit that's the 11th circuit that really had a reasoned opinion the dc circuit looked to the 11th circuit and the ninth circuit's opinion i'm not even sure if you can properly characterize what they said as a holding or as a rule that was applied the 11th circuit was very clear about what they were doing but it was on plain error they didn't apply the rule of lenity there's perhaps not a reason to go out and make a wholesale change for one circuit that's going to give a reasoned opinion about how a rule applies as we know from other contexts in the guidelines the sentencing commission waited for example on 2l 1.2 for forcible sex offenses for a number of years when there were different interpretations sarmiento funes being one of them from this circuit where the sentencing commission didn't take action until there was i guess a mass a critical mass of decision and so in this case that's what that's what this court would have and the rule of lenity is that very important principle and i didn't mean to to be disrespectful but i just want to wanted to say that the rule of of importance than than the sentencing commission's own no i was just i was just explaining that to me the sentencing commission doesn't have to worry about whether that was raised your distinction of marseilles is that it wasn't raised and i'm saying the sentencing commission wouldn't care because i didn't their thing anyway i understand all right thank you mr harman thank you appreciate the briefing and argument case will be submitted call the next case conway freight versus national labor relations board